FRANK, Judge.
Henry N. Lawson and his wife, Barbel A. Lawson, initiated an action seeking injunc-tive relief and damages stemming from conduct attributed to James Mulieri and his wife, Patricia. The present appeal involves issues originating in the trial court’s order awarding attorney’s fees to the Mulieris pursuant to section 772.104, Florida Statutes (1989). Before turning to the heart of the current dispute, we must first advert to a prior proceeding affirmed by this court. Lawson v. Mulieri, 550 So.2d 472 (Fla. 2d DCA 1989) (per curiam) (Lawson I).
Upon the completion of the Lawsons’ evidence when Lawson I was before the trial court, the Mulieris’ motion for directed verdict was granted. The colloquy which followed the argument in support of the motion is pertinent to the present matter:
*824 MR. POWERS:
That will be my motions for directed verdict.
THE COURT: Response?
MR. MC CLUNG: Yes, your Honor.
THE COURT: Counsel, before you argue let me ask a question. Are you bringing your action under 772?
MR. MC CLUNG: Which action?
THE COURT: Both of the actions, both the aggravated assault and the assault and battery charge.
MR. MC CLUNG: Is this the statute that—
THE COURT: Civil remedies for criminal wrongs.
MR. MC CLUNG: Yes, sir.
THE COURT: I wanted to make sure that we’re not dealing with a common law action. You may proceed, counsel.
MR. MC CLUNG: In converse, your Honor, that statute I think provides for attorney fees and I think it also applies for treble damages.
THE COURT: It does.
MR. POWERS: Your Honor, while we’re talking about that, that was not pled in the amended complaint or any other complaints so we’d certainly— ...
THE COURT: All right. Now are you seeking treble damages on the assault and battery charge?
MR. MC CLUNG: Yes, sir.
THE COURT: Under 772.104?
MR. MC CLUNG: Yes, sir.
THE COURT: Okay. Under which section of 772 are you proceeding under the assault — on the aggravated assault charge? I now have 772 in front of me.
MR. MC CLUNG: I don’t have it in front of me, Judge....
MR. MC CLUNG: I’m finished, your Honor.
THE COURT: The Court at this time will grant the motion for directed verdict on each of the counts. The Court specifically finding that, first of all, the case as proceeds [sic] does not fall within 772 and 772 is now meant to be an exclusive remedy.[1]
After issuance of the mandate in Lawson I, the Mulieris successfully sought attorney’s fees in the trial court, including those they expended in connection with the appeal in Lawson I. It is the award of those fees in the amount of $13,365.35, plus interest, which we now scrutinize.
In our consideration of the pending matter, we have noted the absence from the issues tendered in Lawson I of any contention grounded upon chapter 772:
I. IT IS ERROR FOR THE TRIAL COURT TO FIND THAT THE DEFENDANT HAD COMMITTED AN AGGRAVATED ASSAULT ON ONE OF THE PLAINTIFFS AND THEN DIRECT A VERDICT AGAINST THE PLAINTIFF HUSBAND ON THE BASIS THAT THERE WAS INSUFFICIENT EVIDENCE THAT THE PLAINTIFF HUSBAND SUFFERED ANY DAMAGES.
II. IT IS ERROR FOR THE TRIAL COURT TO DIRECT A VERDICT AGAINST ONE OF THE PLAINTIFFS IN HER ASSAULT AND BATTERY COMPLAINT BY RULING THAT THE DEFENDANT HUSBAND HAD TO HAVE THE SPECIFIC INTENTION OF HARMING THAT PLAINTIFF.
In Lawson I, as was true at all times when this litigation was before the trial court, the Lawsons’ counsel failed to question or challenge the appropriateness of the trial court’s reliance upon chapter 772, the civil RICO statute. By confining the issues for review in Lawson I to those set forth above, the Lawsons did not accord this court an opportunity to pass upon whether chapter 772 controlled the outcome of the proceeding. That deficiency confined this court to issues involving only the sufficiency of the evidence and whether the trial court erred in determining that Mr. Mulieri had to have a specific intention to injure Mrs. Lawson. Those issues, alone, were affirmed in Lawson I. Moreover, our review of the brief filed on behalf of the *825 Lawsons in Lawson I discloses no reference to chapter 772 notwithstanding the trial court’s plainly stated reliance upon that statute in reaching the determination to grant the Mulieris’ motion for a directed verdict.
The question of chapter 772’s relevance to the underlying litigation is now, however, before us in the aftermath of the trial court’s determination to award fees to the Mulieris based upon section 772.104, the pertinent part of which provides that: “The defendant shall be entitled to recover reasonable attorney’s fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim which was without substantial fact or legal support.”
The Lawsons’ attorney seriously erred in responding to the trial court that the Law-sons’ action implicated chapter 772. We derive from the record that he, at that moment, had neither an awareness of chapter 772’s purpose, the manner in which the statute is designed to operate nor the consequences of relying upon it. Chapter 772 was not pleaded by the Lawsons and the case was not tried as one arising under chapter 772. It is evident that the Law-sons’ attorney’s affirmative response to the trial court’s spontaneous inquiry regarding chapter 772 was expressed in the belief that he was adopting a judicial suggestion, albeit erroneous, benefitting the Lawsons. Hence, it may seem at first blush that the Lawsons are foreclosed from repudiation of their attorney’s mistaken utterances which produced the directed verdict and resultant exposure to the fee burden created by section 772.104. We do not hesitate to observe that in circumstances other than those presented by the instant record, it is most likely that we would affirm the trial court’s determination to grant attorney’s fees. Here, however, we decline to do so.
We find it significant that the trial court’s reference to chapter 772 came at the close of the Lawsons’ evidence. That statute was not the basis for the Mulieris’ motion for directed verdict and its unexpected appearance in the action was no less a surprise to the Mulieris’ attorney as it appears to have been to the Lawsons’. When the trial court alluded to the statute, the Mulieris’ attorney pointed out that the pleadings did not incorporate chapter 772. He began an objection to the trial court’s allusion to chapter 772, but after hearing the trial court’s analysis of the evidence in the context of chapter 772, he realized that the Mulieris were becoming the beneficiary of the newly introduced perception of the case. In our view, if, indeed, the trial court harbored any uncertainty as to the source or nature of the Lawsons’ pleaded claims or believed that chapter 772 affected the outcome of the litigation, that uncertainty or belief should have surfaced and been resolved at an earlier stage. It must have been obvious to the trial court that the Lawsons had neither asserted nor proven an entitlement to damages under chapter 772. The events inspired by the trial court’s reference to chapter 772 during and immediately following the Mulieris’ motion for directed verdict bear the earmarks of a “cat and mouse” game ultimately devouring the Lawsons. As meritless as the Law-sons’ common law action was, demonstrated by our affirmance in Lawson I, the sudden calling into play of chapter 772 at the end of the Lawsons’ evidence came unfairly late in the day. The Lawsons did not try their action with chapter 772 in mind. The language of section 772.104, conditioning the award of attorney’s fees “upon a finding that the claimant raised a claim,” cannot be glossed over because of the unsound behavior of the Lawsons’ attorney. The evidentiary elements essential to a “claim” pursued under chapter 772 were never a part of the Lawsons’ case in chief. See §§ 772.102-772.11. Our analysis is not founded on sophistry; the Law-sons simply did not “raise” their claims within the contemplation of chapter 772.
In concluding our assessment of this matter, we cannot escape dealing with the Lawsons’ attorney’s acceptance of the pertinence of chapter 772. We are compelled by the uncommon character of this proceeding to draw upon those authorities which depart from the settled rule that “counsel is the litigants’ agent and that his acts are the acts of the principal.” Beasley *826 v. Girten, 61 So.2d 179, 181 (Fla.1952). We have, however, unreluctantly weighed “the severity and prejudicial effect of [Law-sons’] counsel’s action against the loss to the innocent litigant,” Livingston v. State, Dept. of Corrections, 481 So.2d 2, 3 (Fla. 1st DCA 1985), and have concluded that but for the misspoken, uninformed response to the trial court’s inquiry, this matter would have reached an end-point within the boundaries of Lawson I, i.e., without the financial consequences imposed by the trial court’s judgment granting the Mulier-is costs and attorney’s fees. Based upon the instant record, we are persuaded to a certainty that culpability for an error of the kind which occurred when the Lawsons’ attorney bowed to the trial court’s insinuation that the Lawsons’ claims fell within chapter 772 “should ordinarily be imposed on counsel rather than the litigant.” Beasley.
Accordingly, based upon the foregoing, we reverse and vacate the “judgment of costs and attorneys fees” and remand only for the determination of costs awardable to the Mulieris as the prevailing parties in Lawson I.
SCHEB, A.C.J., and PATTERSON, J., concur.

. The trial court's finding that chapter 772 provides the exclusive remedy for the misconduct assigned to the Lawsons was wholly incorrect. Section 772.18 expressly forecloses the preclusion of any other remedy, civil or criminal.